In the Matter of Allen P. DAWLEY, individually and d/b/a Dawley Development Company, Debtor.

PENNBANK, Plaintiff,

v.

Allen P. DAWLEY, individually and d/b/a Dawley Development Company, Defendant.

Bankruptcy No. 82–00441.
Adv. No. 82–0384.

United States Bankruptcy Court, W.D. Pennsylvania.

March 25, 1983.

John E. Egan, and Wasson, Egan & Wilson, Franklin, Pa., for plaintiff.

Lawrence C. Bolla, and Quinn, Gent, Buseck & Leemhuis, Inc., Erie, Pa., for defendant.

## MEMORANDUM AND ORDER ON APPLICATION FOR RELIEF FROM STAY

WILLIAM B. WASHABAUGH, Jr., Bankruptcy Judge.

This matter comes before us on Complaint of Pennbank for relief from automatic stay in respect to a Jaswell drilling rig built and fitted into the framework of a Mack International 5,070 Pay Star Truck the debtor purchased as a single unit from the Jaswell Drilling Corporation October 12, 1977. Security was given and accepted for the unpaid purchase money advanced by the plaintiff after giving credit for the value of an older traded-in similar unit in the form of a security agreement and filed UCC financing statements in which the collateral

was described as comprising the drilling rig without mention of the Mack International truck. No certificate of title to the truck or integrated unit was obtained because the debtor did not wish to apply for such certificate of title as he would have had to pay a sales tax in excess of $3,000 by so doing, and hence the bank's security interest was not noted on such non-existent certificate under the provisions of Section 1132 of the Pa. Motor Vehicle Code, and Section 9302(c) and (d) of the Pa. Uniform Commercial Code. The question involved is whether the plaintiff is the holder of a perfected lien in the drilling rig and/or unit in which incorporated as against the defendant trustee in bankruptcy.

■■■■ That the unit is a "vehicle(s) designed for the transportation of persons or property to which machinery has been attached" within the meaning of 75 Pa.C.S.A. § 102 of the Pennsylvania Motor Vehicle Code defining special mobile equipment not requiring certificates of title and exceptions thereto appears from the fact that it is completely mobile and was used by the debtor to drive from site to site both on and off the Pennsylvania highways and perform the drilling operations he was in the business of providing from the assembled machine, the testimony being that it could easily attain speeds up to 55 miles an hour (102). The photographs in evidence, Trustee's Exhibits 6, 7, 8 and others, show the vehicle is a complete unit having the appearance of a truck with the drilling rig and its component parts integrated therein, and that the bank was cooperative with the debtor's desire to save the $3,000 sales tax by not obtaining a certificate of title and license plates therefor appears from the fact that it completed the transaction by accepting the security agreement and financing statements describing the oil drilling rig without mentioning the truck and filed the latter in the offices of the Secretary of the Commonwealth and the Prothonotary under Title 9 of the Pennsylvania Uniform Commercial Code without requiring the debtor to obtain a certificate of title with its encumbrance noted thereon. Further, the officer who closed the transaction

and acquiesced in this method of attempting to perfect its lien testified the borrowing from the bank was to finance the purchase of the truck as well as the rig (34, 35). The bank acquired an additional lien on the debtor's real estate which also constituted security for the borrowing (pages 44, 45). It was also testified that although it would have been possible to dismount the rig and perform drilling operations with it after mounting it on a skid, it was not feasible for the debtor to do so because it would require the obtaining of a crane and two days' labor of his employees to remove it from the motor unit and reassemble and mount it on a skid (108, 109).

The operator of the unit testified he and another employee were arrested at least twice for driving the vehicle on the highways without license plates and a certificate of title and that the debtor paid the involved fines without appealing (106, 107), and it thus appears (1) that the unit was considered a motor vehicle to persons not concerned with its operation and (2) that by not appealing the rulings and having the validity of his decision not to obtain a certificate of title confirmed as correct, the debtor did not wish to risk having the unit classified as a motor vehicle and being required to pay the sales tax he had evaded with the cooperation of the bank.

It was testified that the debtor performed drilling operations with the unit almost daily on sites in the vicinity of his place of business which did not require highway driving in addition to the thirty or more times on other sites involving such driving to a total mileage of about 500 miles (101, 105). It was also driven on public highways from the seller's location in Rhode Island to the debtor's place of business in Venango County, Pennsylvania, at the time of its acquisition and at least one other time back to Rhode Island and return for repairs with the assistance of a special Rhode Island transporter plate furnished by the manufacturer (71, 72, 86). Additionally, the rig was completely destroyed by fire and rebuilt at an expense of $165,000 paid by a fire insurance company and a new

serial number installed therein which was never changed or updated on the filed financing statements as the control panel on which the original serial number was stamped was destroyed along with the entire rig in such conflagration (75, 76, 81–85). It was testified that a plate available for "special mobile equipment" defined in Section 102 of the Pennsylvania Motor Vehicle Code, 75 Pa.C.S.A. § 102, supra, at an expense of only $25.00 was never applied for, presumably because an attempt to do so would have risked the imposition of the otherwise avoided $3,000.00 Pennsylvania sales tax (96, 98).

Section 9302(c)(2) and (d) of the Pennsylvania Uniform Commercial Code, 13 Pa.C.S.A. 9302(c)(2) and (d) provides the following:

"(c) When filing provisions of division inapplicable.—The filing provisions of this division do not apply to a security interest in property subject to a statute:

.    .    .    .    .

"(2) of this Commonwealth which provides for central filing of security interests in such property, or in a motor vehicle which is not inventory held for sale for which a certificate of title is required under the statutes of this Commonwealth if a notation of such a security interest can be indicated by a public official on a certificate or a duplicate thereof.

"(d) Method of perfection when filing provisions inapplicable.—A security interest in property covered by a statute described in subsection (c) can be perfected *only by registration of filing under that statute or by indication of the security interest on a certificate of title or a duplicate thereof by a public official.*" (emphasis supplied)

The following sections of the Pennsylvania Motor Vehicle Code, 75 Pa.C.S.A. as amended, are also relevant:

Section 1132(a) (from pocket part) and (b):

"(a) Validity of unperfected interest.— Unless perfected as provided in this subchapter or excepted by section 1131 (relating to applicability of subchapter), a security interest in a vehicle of a type for which a certificate of title is required is not valid against any person as to whose rights an unperfected security interest is subordinate under the provisions of Title 13 (relating to commercial code).

"(b) Method of perfection.—A security interest is perfected by notation thereof by the department on the certificate of title for the vehicle.  In order to obtain such notation the lienholder shall deliver to the department the existing certificate of title, if any;  an application for a certificate of title upon a form prescribed by the department containing the name and address of the lienholder;  and any other information regarding the security interest as may be reasonably required and the required fee."

Section 1131(4):

"This subchapter does not apply to or affect:

.    .    .    .    .

"(4) Any vehicle for which a certificate of title is not required under this chapter."

Section 1137:

"*The method provided in this subchapter for perfecting and giving notice of security interests is exclusive.*" (emphasis supplied)

Section 1302 of the Vehicle Code exempts from registration certain vehicles including golf carts and farm trucks not driven on the highways over 25 miles to and from the owner's farm and place of business (Subsection [a][2][i], [ii] and [iii] ) and between different farms not more than ten miles apart owned by the same person (§ 1302[a][10][i][B] ).

It follows that the involved unit consisting of a Mack International 5,070 Pay Star Truck comprised of a cab, chasis, and engine into the framework of which the oil drilling rig described in the U.C.C. filings was specially adapted and constructed after the desired truck and model were selected by the buyer (68, 69) which could not be removed therefrom or used on other mountings without the obtaining of a crane and

two days' labor of the debtor's employees in disassembling and remounting it (108) lost its identity as a separate piece of equipment when built and incorporated into the Mack International Truck as a component integral part thereof and that the security interest Pennbank attempted to perfect thereagainst by U.C.C. filings instead of noting an encumbrance on a certificate of title for the entire unit is null, void and of no effect as against the title of the trustee in bankruptcy because not perfected in accordance with the provisions of the Pennsylvania Uniform Commercial and Motor Vehicle Codes prescribing an exclusive method of perfecting and giving notice of such lien.

An appropriate Order will be entered.